IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD L. NICELY,            )
                             )
          Plaintiff,         )
                             )
v.                           )        Civil No. 04-1384-WEB
                             )
DONALD RUMSFELD,             )
Secretary of Defense,        )
                             )
          Defendant.         )
_____)

**Memorandum and Order**

Plaintiff Donald Nicely filed this action *pro se* claiming he was subjected to unlawful employment discrimination in his job with the Defense Commissary Agency at McConnell Air Force Base. The matter is now before the court on the defendant's motion to dismiss or, alternatively, for summary judgment. The court finds that oral argument would not assist in deciding the issues presented.

I. *Facts*.

Plaintiff alleges he was subjected to unequal terms and conditions of employment and "racial gestures and statements." Doc. 1 at 3. Accordingly to plaintiff, he had been wrongfully terminated from his position with the DCA because of false statements about him by Ms. Joan Countee, the director of the McConnell Commissary, and Ms. Melita Walker, plaintiff's subordinate at the Commissary, but he was reinstated by the Merit Systems Protection Board. (Plaintiff does not claim that his termination was an unlawful act of discrimination. Rather, his discrimination claim is based on events after he was reinstated). Plaintiff alleges that when he returned to work on or about July 30, 2003, he was called to Ms. Countee's

office, together with Ms. Walker, and that Ms. Countee told Ms. Walker to give her keys to plaintiff. Ms. Walker did so. Ms. Countee then allegedly gave Ms. Walker a master set of keys and, according to plaintiff, said, "I can do this." She then "raised her hand to just above her shoulder with her fingers bent in almost a fist" and told plaintiff he could leave. Plaintiff believes her gesture was "the old 'Black power' sign." Furthermore, according to plaintiff, he was not given a personal code for the area "key box" until a few days later, meaning he was dependent upon Ms. Walker or others to let him back into secure areas, including his own office, until August 2, 2003, when he was given a personal code. Plaintiff alleges that it "was very demeaning that I, as [Ms. Walker's] supervisor, had to wait for her to allow me to enter." Additionally, plaintiff alleges that Ms. Countee sent "important HQ letters to [Ms. Walker] and has her give them to me after she takes action on them." Plaintiff asserts that such information "should be sent to the department manager to have appropriate action taken; not sent to the assistant and then given only a photocopy." Plaintiff also contends that between August 5 to August 10 after his return, he received training from Ms. Walker [apparently relating to a new computer system] and that Ms. Walker made several statements about how she could do the job better than plaintiff. Plaintiff also contends that Ms. Walker made two mistakes during training which he detected, including approving an incorrect time card, but that Ms. Countee was unconcerned with the mistakes.

Plaintiff claims that on August 14, 2003, he was called by Ms. Walker at home and was told that she had cancelled his leave, but that she subsequently called back and left a message that he should go ahead and take leave. Plaintiff states that at no time did plaintiff's supervisor call him or question him about this leave when he returned to work.

Finally, plaintiff alleges that every time he shops at the Commissary and Ms. Walker or Ms.

Countee is present, they follow him around the store and watch everything he does.

    II. *Motion to Dismiss or for Summary Judgment*.

The defendant claims plaintiff has failed to state a claim for relief and that his allegations do not show a prima facie case of race discrimination. Defendant further claims plaintiff has failed to allege or show that he suffered an adverse employment action within the meaning of Title VII. Finally, defendant argues plaintiff has failed to allege or show he was subjected to the type of severe or pervasive harassment that would support a claim of employment discrimination.

Plaintiff alleges that Ms. Countee and Ms. Walker are black, and that he is white. He asserts: "A (black) store director using her position to allow a (black) subordinate to have power and control over a (white) supervisor and bypassing the plaintiff's (white) supervisor is discrimination." Doc. 10 at 4. He further objects to the fact that upon his return he was trained on a new system by Ms. Walker. According to plaintiff, "[t]hese actions made for a very hostile work environment and a discriminatorily [sic] abusive working environment because all the plaintiff's employees saw plaintiff was subject to the subordinate."

Both sides have submitted matters outside the pleadings in connection with the motion, and both sides appear to have had an adequate opportunity to present materials relevant to the motion. The court will thus consider these outside materials and will treat the motion as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b); *Salehpoor v. Shahinpoor*, 358 F.3d 782, (10th Cir. 2004).[1]

The standards and procedures for summary judgment are well established and will not be fully

---

[1] Even if the outside matters were excluded and the court decided the motion based solely on the pleadings pursuant to Rule 12(b)(6), the court concludes dismissal would be appropriate because plaintiff has failed to allege facts showing an actionable employment discrimination claim under Title VII.

3

repeated here. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Rule 56, the moving party initially bears the burden of making a prima facie showing of the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This burden may be satisfied by pointing to an absence of evidence on an essential element of the non-movant's claim. *Id*. at 671 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party carries this burden, the opposing party cannot simply rest upon the pleadings; it must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Because it is the role of a jury to resolve any conflicts in the evidence, the court must examine the evidence on a motion for summary judgment in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir. 1995).

III. <u>Discussion</u>.

Title VII prohibits employers from discriminating with respect to "terms, conditions, or privileges of employment," on account of an individual's race or color. *See* 42 U.S.C. § 2000e-2(a)(1). Assigning an employee to a less desirable job or denying him the opportunity for a more desirable position, based on

the employee's race, are adverse employment decisions affecting the terms and conditions of his employment, and can support Title VII liability. *See Jones v. Wal-Mart Stores, Inc.*, 92 F.3d 1196 (Table), 1996 WL 425741 (10th Cir., July 30, 1996) (unpublished). But the adverse consequences of which plaintiff complains -- not being given an access code for several days following his reinstatement, having to rely on co-workers during that period to gain access to office areas, seeing a supervisor make a gesture of "black power," being trained on a new system by an employee under his supervision, or being subjected to comments from the employee that she could perform the job better than plaintiff, as well as the other allegations made by plaintiff, are not the type of "adverse employment actions" contemplated by Title VII. To constitute an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. *Medina v. Income Support Div., State of New Mexico*, ___ F.3d ___, 2005 WL 1519061, *4 (10th Cir., June 28, 2005) (*citing Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 533 (10th Cir. 1998). Conduct that effects a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" will be deemed an adverse employment action. *Id.* (*Citing Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004). An adverse employment action, however, does not include "a mere inconvenience or an alteration of job responsibilities." *Id.* (*citing Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)). *See also Dunlap v. Ks. Dept. of Health and Environment*, 127 Fed.Appx. 433, 2005 WL 737585 (unpublished) (10th Cir., Apr. 1, 2005) (being questioned about a request for leave is, at least in the circumstances of this case, "a mere inconvenience" that does not constitute an adverse employment action). Even accepting plaintiff's allegations of discriminatory motive as true and construing them in the light most favorable to plaintiff, the actions allegedly taken by the

defendant do not amount to adverse employment actions of the type covered by Title VII. The actions of Ms. Countee and Ms. Walker may have made plaintiff uncomfortable, but these actions did not significantly change his employment status or materially affect his employment benefits or privileges. As such, his allegations fail to state a viable *prima facie* case of employment discrimination.

The court notes that plaintiff has characterized his claim in part as one based on a hostile work environment. In evaluating a discrimination claim based on an allegedly hostile work environment, a court must inquire whether "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult, ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ...'" *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993). Plaintiff's instances of alleged hostility by his co-workers are not sufficient to show a workplace permeated with discriminatory intimidation severe enough to alter the conditions of plaintiff's employment. Again, the actions of plaintiff's co-workers may have upset him or made him uncomfortable, but they do not rise to the level of actionable harassment under Title VII. *Cf. Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir.1998) (coworker hostility constitutes an adverse employment action only if it is sufficiently severe).

IV. *Conclusion*.

Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 17) is GRANTED. The court has considered plaintiff's sur-reply of June 13, 2005 (Doc. 17) in connection with his response to the defendant's motion to dismiss.

Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 7) is hereby GRANTED. It is Ordered that the plaintiff shall take nothing and that the action be dismissed on the merits.

The clerk of the court is directed to enter judgment accordingly.

    IT IS SO ORDERED this ___6th___ Day of July, 2005, at Wichita, Ks.

                                        s/Wesley E. Brown
                                        Wesley E. Brown
                                        U.S. Senior District Judge